UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

SYED AHMAD,

                    Defendant.
_____

**REPORT, RECOMMENDATION AND ORDER**

20-CR-00089(LJV)(JJM)

        Defendant Syed Ahmad is charged, along with three co-conspirators, in a Superseding Indictment [53][1] with conspiracy to distribute marijuana, in violation of §846. Id., Count 1. Before the court are Ahmad's omnibus pretrial motion [76] and the government's cross-motion for reciprocal discovery (government's Response [79] at 18-19), which have been referred to me by District Judge Lawrence J. Vilardo for initial consideration [6].

        Having considered the parties' submissions [76, 79, 84] and heard oral argument on June 7, 2021 [86], for the following reasons the government's cross-motion is granted, Ahmad's non-dispositive motions are denied, and I also recommend that his motions to dismiss and suppress be denied.

## BACKGROUND

        Ahmad is currently incarcerated after pleading guilty in December 2019 in the Central District of Illinois to possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B). *See* Judgment [76-2].   According to Ahmad, the charges in

_____

[1]        Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

this case and those leading to his plea both emanate from his December 2017 arrest in

Jacksonville, Illinois.  Ahmad's Memorandum of Law [76-10] at 1.


## DISCUSSION

A.      **Ahmad's Pretrial Motions**[2]

    1.      **Motion to Dismiss the Superseding Indictment**

        Ahmad seeks to the dismiss the Superseding Indictment as against him on double

jeopardy grounds because "the charges here . . . reprise the charges against him resolved by [his]

guilty plea in the Central District of Illinois".  Ahmad's Memorandum of Law [76-10] at 2.

        "The double jeopardy clause protects against . . . a second prosecution for the

same offense after conviction".  United States v. Persico, 832 F.2d 705, 710 (2d Cir. 1987).  "A

double jeopardy claim cannot succeed unless the charged offenses are the same in fact and in

law." United States v. Estrada, 320 F.3d 173, 180 (2d Cir. 2003).  However, "the critical double

jeopardy inquiry is not factual, *i.e.*, whether the same conduct is at issue in charges brought

under different statutes, but legal, *i.e.*, whether the 'offense' - in the legal sense, as defined by

Congress - complained of in one count is the same as that charged in another." United States v.

Basciano, 599 F.3d 184, 198 (2d Cir. 2010).

        The offenses here - possession of marijuana with intent to distribute and

conspiracy to distribute marijuana - are not the same in law.  "[I]t is well settled that substantive

drug offenses and a conspiracy to commit those offenses are distinct offenses for double

jeopardy purposes". United States v. Nunez, 2011 WL 112260, *3 (W.D.N.Y. 2011); Norris v.

Brown, 2011 WL 2490838, *5 (E.D.N.Y. 2011) ("admission into evidence of petitioner's

---

[2]      Ahmad also sought a bill of particulars, but agreed at the oral argument that it had been rendered
moot by the government's representation that his arrest ended his participation in the conspiracy.

previous conviction for possession of narcotics did not violate the prohibition against double jeopardy because it was relevant to the conspiracy charges, which required proof of an overt act in furtherance of the conspiracy, and petitioner's previous conviction for narcotics possession did not bar his prosecution for conspiracy"). *See also* United States v. Felix, 503 U.S. 378, 389 (1992) ("a substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes").

Plaintiff points to the offenses being the same in fact (*e.g.*, "nothing produced by the government suggests any involvement by Mr. Ahmad outside of any agreement to possess marijuana for distribution dating back to activity prior to his December 31, 2017 arrest in Illinois" Ahmad's Memorandum of Law [76-10] at 4-5), but "only when the counts charged are based on the same statute does the relevant inquiry become whether the crimes 'are the same in fact'". United States v. Jenkins, 280 F. Supp. 3d 364, 372 (W.D.N.Y. 2017) (*citing* Basciano, 599 F.3d at 198). In any event, the government states that "Ahmad's conduct is greater than just a sole incident" (government's Response [79] at 18), which I accept for purposes of this motion. Therefore, I recommend that this motion be denied.

## 2. Motion to Dismiss on Due Process Grounds

In passing, Ahmad notes that the "[p]re-indictment delay due to the government's choice to wait until 2020 to bring charges based on information it possessed since 2018, while detained and then incarcerated, [is] severely prejudicial to [him], [and] also violated his Fifth Amendment right to due process". Ahmad's Memorandum of Law [76-10] at 5. Although the government does not respond to that argument, it is not supported by the authority cited by Ahmad. He relies on United States v. Groves, 571 F.2d 450 (9th Cir. 1978), which dismissed an Indictment on vindictive prosecution grounds that was returned shortly after the defendant

sought dismissal of the Criminal Complaint under the Speedy Trial Act.  Since those circumstances bear no similarity to those here or to Ahmad's pre-indictment delay argument, I recommend that this motion be denied.

### 3.    Motion for Production and Suppression of Identification Evidence

According to Ahmad "it appears the government asked a confidential source to identify [him], using a photo, without an appropriate array".  Ahmad's Memorandum of Law [76-10] at 5. The single photograph of Ahmad that was used to make the identification ([76-8] at 2) has "Frank?" handwritten on the bottom.

The government explains that the photo of Ahmad was "first shown to a cooperating witness [who] testified in [the] Grand Jury". Government's Response [79] at 9. It argues that "the concerns that animate <u>Wade</u>"[3] are not implicated here, since "the cooperating Witness "knew Mr. Ahmad well" (*i.e.*, "for years"), and that any concerns about suggestiveness of the out-of-court identification can be explored at trial.  <u>Id</u>. at 11-13.  I agree with the government.

A defendant has the right not to be subjected to an identification procedure that creates a "very substantial likelihood of irreparable misidentification".  <u>Manson v. Brathwaite</u>, 432 U.S. 98, 116 (1977).  In determining whether to suppress identification testimony, the court must undertake a two-step analysis. First, the court must consider whether the identification procedure was "impermissibly" or "unnecessarily" suggestive.  If so, the identification must nevertheless possess "sufficient aspects of reliability".  <u>United States v. Bubar</u>, 567 F.2d 192,

---

[3]    <u>United States v. Wade</u>, 388 U.S. 218 (1967).

197 (2d Cir. 1977). Thus, "[e]ven if the procedure was unnecessarily (or impermissibly) suggestive . . . a district court may still admit the evidence if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability." United States v. Bautista, 23 F.3d 726, 729-30 (2d Cir. 1994).

"An in-court identification is . . . admissible, despite an improper pre-trial identification procedure, if the witness is familiar with the defendant prior to the incident." United States v. Crumble, 2018 WL 1737642, *2 (E.D.N.Y. 2018). While it is curious that the witness who purportedly identified Ahmad from the photograph appears to have written "Frank?" on that photograph, I accept the government's representations concerning the identifying witnesses' familiarity with Ahmad and find that further disclosure of the identification procedures used, much of which has already been disclosed by the government, is unnecessary. See United States v. Johns, 336 F.Supp. 2d 411, 424 (M.D. Pa. 2004) ("[t]he court is entitled to rely on the representations of counsel, as officers of the court").

When the government's witnesses, their anticipated testimonies, and Jencks Act material are disclosed, Ahmad will be "in a better position to determine if either a Wade hearing or *voir dire* outside the presence of the jury are necessary" and have the ability to seek that relief, if necessary. United States v. Valdez, 2020 WL 7700338, *6 (W.D.N.Y.), adopted, 2020 WL 7137137 (W.D.N.Y. 2020); United States v. Stephenson, 2020 WL 2115719, *9 (W.D.N.Y.), adopted, 2020 WL 2113496 (W.D.N.Y. 2020) (same). As the government notes, if the witness knew Ahmad as it alleges, "it is doubtful [he] will claim that . . . [the witness] misidentified him". Government's Response [79] at 15. Therefore, I recommend that this motion be denied.

4.      **Motion to Suppress Illinois Evidence and Statements**

Ahmad moves to suppress the "physical evidence seized from [him] and alleged statements attributed to [him] in connection with his December 31, 2017 arrest in Illinois". Ahmad's Memorandum of Law [76-10] at 8. This same motion was denied by the Central District of Illinois, but preserved as part of Ahmad's plea and currently on appeal before the Seventh Circuit Court of Appeals (Case No. 19-3490). Id. Instead of relitigating that issue, Ahmad asks that "[i]f the Seventh Circuit reverses or remands the case to the Central District of Illinois, the Court should consider whether to hold a new suppression hearing". Id. Since the government does not object to this proposal (government's Response [79] at 9), I recommend that the motion be denied, without prejudice to renewal.

5.      **Motion for Rule 16 Discovery**

"Rights of discovery in criminal cases, unlike in civil cases, are severely circumscribed." BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon, 1995 WL 489426, *4 (S.D.N.Y. 1995). Apart from the government's Brady,[4] Giglio,[5] and Jencks Act (18 U.S.C. §3500) obligations, which are addressed separately, Fed. R. Crim. P. ("Rule") 16 "is . . . the sole authorized vehicle under the Federal Rules of Criminal Procedure for pre-trial discovery in criminal cases". United States v. Louis, 2005 WL 180885, *2 (S.D.N.Y. 2005).

Ahmad moves pursuant to Rule 16 for various forms of discovery. Ahmad's Memorandum of Law [76-10] at 8-12. In response, the government represents that it has provided "substantial voluntary discovery . . . that far exceeds the requirements of Rule 16"

---

[4]      Brady v. Maryland, 373 U.S. 83 (1963).
[5]      Giglio v. United States, 405 U.S. 150 (1972).

Government's Response [79] at 2 It also acknowledges its "continuing obligation to provide discovery materials as such items become available".  Id.

"Where the Government makes good faith representations that it is complying with Rule 16, and that it will continue to do so, courts in this Circuit deny specific discovery requests." United States v. Zelaya-Romero, 2018 WL 1033235, *3 (S.D.N.Y. 2018).  Ahmad has "not pointed . . .  to anything that suggests otherwise, and [I] ha[ve] no reason to doubt the Government's representations. Those assurances are sufficient; the Government is not required to conduct a separate investigation for the purpose of responding to a defendant's discovery requests." Id.  Nor, in response to the government's representations, does Ahmad identify any specific requests for discovery that he contends fall within the scope of Rule 16, but have not been produced by the government.  Therefore, the motion is denied.


6.    **Motion for Immediate Production of Brady/Giglio Material**

"The government's obligations under Brady . . . are seemingly well-established. The prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment . . . . This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (citing Giglio, 405 U.S. at 154).  "[A]s a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant". Id. at 146.  "[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." Id. at 144.  "[T]he time

required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case". Id. at 146.

In both his motion (Memorandum of Law [76-10] at 8-9) and reply (Reply Memorandum of Law [84] at 4, §V), Ahmad focuses on the government's continuing duty to provide agent notes pursuant to Brady. Although the government appears to argue that rough notes instead constitute Jencks Act material (government's Response [79] at 3), they must also "be disclosed pursuant to Brady if they contain material and exculpatory information". United States v. Alvarez, 86 F.3d 901, 904 (9th Cir. 1996); United States v. Bates, 2007 WL 2156278, *3 (E.D. Mich. 2007), aff'd, 363 Fed. App'x 369 (6th Cir. 2010) ("the government's [Brady] obligation extends to an agent's rough interview notes if they contain exculpatory evidence not otherwise disclosed").

Otherwise, the government generally contends that Ahmad's motion should be denied, since it "is aware of its obligations pursuant to Brady, Giglio, and their progeny". Id. at 2.[6] Consistent with the Due Process Protections Act and Rule 5(f)(1), earlier in this case I also confirmed the government's Brady obligations and cautioned it that the failure to timely make such disclosures would result in a variety of consequences, including dismissal of charges and sanctions [57]. With the clarification above concerning rough notes, I have no reason to doubt that the government will fully comply with its Brady obligations. Therefore, the motion is denied.

---

[6]    In a separate section of its response addressing Ahmad's Jencks Act request, the government states that while "there is no requirement for investigators to retain notes where the notes have been incorporated into a final report", it "has advised investigators to retain notes". Government's Response [79] at 3. Therefore, if any issue arises with respect to the government's Brady obligations, these materials will be preserved.

-8-

7.    **Motion for a Pretrial Hearing as to the Admissibility of Alleged Co-Conspirator Statements**

I agree with the government (Response [79] at 6) that this is an issue to be resolved by the trial judge.  *See* United States v. Mastropieri, 685 F.2d 776, 787 88 (2d Cir. 1982) ("[r]esponsibility for determining whether declarations of an alleged conspirator should be admitted against another rests on the shoulders of the trial judge"); United States v. Anguiera, 2012 WL 1232096, *1 (W.D.N.Y. 2012) ("the relief sought for excluding non-testifying co-conspirators statements . . . [is] better considered by the District Judge prior to trial and are deferred for that consideration"). Therefore, this motion is denied, without prejudice to renewal before the trial judge.

8.    **Motion for Jencks Act (18 U.S.C. §3500) Material**

Ahmad seeks the production of Jencks Act material, including grand jury transcripts, not less than 30 days before trial. Ahmad's Memorandum of Law [76-10] at 14-15. However, "[c]ourts in this Circuit have consistently held that district courts lack the power to mandate early production of Jencks Act material". United States v. Morgan, 690 F.Supp.2d 274, 286 (S.D.N.Y. 2010).  *See* United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001) (the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements"); In re United States, 834 F.2d 283, 287 (2d Cir. 1987) ("as to the district court's order for the production of statements of government witnesses, the Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act"); United States v. Parris, 2014 WL 2745332, *14 (S.D.N.Y. 2014) ("[t]he Jencks Act provides that the Government must produce prior statements of its witnesses after each has testified at trial and deprives the District Courts of the power to mandate early production of such material"); United States v.

Scott, 2015 WL 1525580, *4 (D. Conn. 2015) ("[t]he Second Circuit has consistently held that a district court's 'power to order pretrial disclosure is constrained by the Jencks Act,' and that the district court may not order advance disclosure inconsistent with the Jencks Act itself"). Nonetheless, the government agrees to endeavor to produce any Jencks Act material by the deadline set by the trial court. Government's Response [79] at 8.

At this time, I have no reason to believe that the government will not act reasonably and in good faith with respect to its Jencks Act obligations. I also have no reason to question whether the government understands its Jencks Act obligations. Therefore, the motion is denied.

**9. Motion to Produce Written Summaries under Fed. R. Evid. 702, 703 and 705**

Ahmad seeks a "written summary of any evidence that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence". Ahmad's Motion [76] at 3, ¶10. In response the government states that it "has provided forensic laboratory reports of seized controlled substances" and "will provide any additional laboratory reports upon receipt", "will timely provide the experts' credentials and methods so that the experts may be evaluated and cross-examined by defendant", and "will provide summaries of anticipated expert testimony in accordance with the standard District Court pre-trial order in this regard". Government's Response [79] at 16. Based on the government's representations, this motion is denied.

**10. Motion to Restrict Introduction of Prior Bad Acts**

Ahmad moves to "[r]estrict[ ] the government's introduction of evidence of prior bad acts pursuant to Federal Rules of Evidence 404(b) and of other crimes or impeachment

material pursuant to Rules 607, 608 and 609, and granting a pretrial hearing to determine the admissibility of such evidence, if any". Ahmad's Motion [76] at 3, ¶11. However, "[t]he issue of admissibility of such evidence . . . pursuant to Rules 404(b), 608 and 609 of the Federal Rules of Evidence is best left to the determination of the trial judge at the time of trial." United States v. Atkinson, 2014 WL 5529446, *3 (W.D.N.Y. 2014). Therefore, this motion is denied, without prejudice to renewal.


**11.    Motion for Joinder**

Ahmad moves to join in "any motions filed by the co-defendants, to the extent such motions are applicable to proceedings against [him]". Ahmad's Motion [76] at 3, ¶12. Since Ahmad fails to identify the specific motions that he seeks to join in, the motion is denied. *See* United States v. Jones, 2006 WL 8457523, *12 (N.D.N.Y. 2006) (denying motion for joinder where "defendants do not . . . specify which motions they believe are consistent with their positions. Thus, the Court has no basis on which to determine the propriety of any defendant joining any other defendant's motion"); United States v. Svihel, 2016 WL 1212364, *6 (D. Minn.), adopted, 2016 WL 1222231 (D. Minn. 2016) (blanket-type joinder motions have been denied "as fatally vague in the absence of the movant's statement identifying each specific co-defendant motion he wished to join, as well as, his basis for standing and the specific factual and legal basis for joining in each motion").

B.    **Government's Cross-Motion for Reciprocal Discovery**

        The government cross-moves for the production of reciprocal discovery pursuant to Rule 16(b) and for disclosures pursuant to Fed. R. Evid. 807.  Government's Response [79] at 18-19.  Since Ahmad does not oppose this motion, it is granted.


## CONCLUSION

        For these reasons, the government's cross-motion (government's Response [79] at 18-19) is granted, Ahmad's non-dispositive motions [76] are denied, and I also recommend that his motions to dismiss and suppress be denied.  Unless otherwise ordered by District Judge Vilardo, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by July 7, 2021.  Any requests for extension of this deadline must be made to Judge Vilardo.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

        Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

        The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the

objections must include "a written statement either certifying that the objections do not raise new

legal/factual arguments, or  identifying the new arguments and explaining why they were not

raised to the Magistrate Judge".  Failure to comply with these provisions may result in the

district judge's refusal to consider the objection.

Dated: June 23, 2021

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge